UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLOS VALLEJO

          Petitioner,

                                 CASE NO. 06-CV-14378
   v.                           JUDGE NANCY G. EDMUNDS
                                 MAGISTRATE JUDGE PAUL J.
                                 KOMIVES

THOMAS K. BELL

          Respondent.

_____/


**<u>REPORT AND RECOMMENDATION</u>**

*Table of Contents*

I.      <u>RECOMMENDATION</u>…………………………………………….................2

II.    <u>REPORT</u>…………………………………………………….……………...2
    A. *Procedural History*…………………………………………............................2
    B. *Factual Background Underlying Petitioner's Conviction*……….....................3
    C. *Standard of Review*…………………………………………......…………....6
    D. *Confrontation Clause Claim (Claim I)*………………………………….....…...8
              1.  The Hearsay Evidence and the State Court Conviction………...............8
              2.  Procedural Default ………………………………...……………….9
              3.  Clearly Established Law.......................................................................11
                   a.  *The Current State of the Law: <u>Roberts</u> and <u>Crawford</u>*..................11
                   b.  *The Applicability of <u>Crawford</u>*………………….…………13
                   c.  *The Applicability of <u>Roberts</u>*………………….....………13
              4.  Analysis………………………………………………………16
    E. *Jury Instruction Claim (Claim II)*………………………....……………...17
              1.  Denial of Jury Instruction CJI 2d 8.3……………………....…………17
              2.  Clearly Established Law……………………………….....………18
              3.  Analysis………………………………………….……………19
    F. *Conclusion*………………………………………………....………………...23

III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>…………......……………...23

1

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Carlos Vallejo is a state prisoner, currently confined at the Carson City Correctional Facility in Carson City, Michigan.

2.    On July 17, 2002, petitioner was convicted of first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a); two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750. 83; possession of a firearm by a person convicted of a felony, MICH. COMP. LAWS § 750.224(f); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227(b), following a jury trial in the Wayne County Circuit Court. On August 5, 2002, he was sentenced to concurrent terms of life imprisonment for the first degree murder conviction, eighteen to eighty-five years in prison for each assault with intent to murder conviction, and three to five years in prison for the felon in possession of a firearm conviction, to be served consecutively to a term of five years in prison for the felony-firearm conviction. He was given 415 days credit for the felony firearm conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.    MR. VALLEJO'S RIGHT TO CONFRONTATION WAS VIOLATED WHEN THE TRIAL COURT ADMITTED, OVER OBJECTION, TESTIMONY REGARDING HEARSAY REMARKS MADE BY UNAVAILABLE DECLARANTS, WHICH REMARKS SUGGESTED THAT MR. VALLEJO SHARED THE PREMEDITATED AND DELIBERATED INTENT TO SHOOT AND KILL ELISEO CUEVAS.
>
> II.    MR. VALLEJO WAS DEPRIVED OF DUE PROCESS WHEN THE TRIAL COURT REFUSED TO INSTRUCT THE JURY, PURSUANT

TO CJI 2D 8.3, THAT IT COULD CONSIDER WHETHER THE KILLING OF MR. CUEVAS WAS FAIRLY WITHIN THE SCOPE OF COMMON UNLAWFUL ACTIVITY.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Carlos Vallejo*, No. 246341, 2004 WL 2412707 (Mich. Ct. App. October 28, 2004) (per curiam).

4.      Petitioner, through counsel, sought leave to appeal these two issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Carlos Vallejo*, 473 Mich. 882, 699 N.W.2d 705 (2005).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 5, 2006. As grounds for the writ of habeas corpus, he raises verbatim the confrontation and due process claims that he raised in the state courts.

6.      Respondent filed his answer on April 17, 2007. He contends that petitioner's first claim is procedurally defaulted and that the state court's adjudication of petitioner's second habeas claim did not involve an unreasonable application of clearly established Supreme Court law.

7.      Petitioner filed a reply to respondent's answer on April 27, 2007.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction is accurately set forth in his brief on appeal:

Defendant-Appellant Carlos Vallejo was convicted of first degree premeditated murder, two counts of assault with intent to murder, felony firearm and being a felon is possession of a firearm, on July 17, 2002, after a jury trial in Wayne County Circuit Court, before the Honorable Brian R. Sullivan. On August 5, 2002, he was sentenced to life imprisonment for murder, eighteen to eighty-five years for assault with intent to murder, and three to five years for being a felon in possession, consecutive to five years for felony firearm.

The charges arose when Mr. Vallejo and two or three other men[1] entered the Aloha Lounge in Detroit, Michigan on June 17, 2002. Eliseo Cuevas was shot and killed by an unidentified person, and Angel Perez and Joel Garcia were also shot. Mr. Vallejo denied taking any part in the shooting of Cuevas, and denied having the intent to kill Perez or Garcia.

Eric Mercado testified, over vehement defense objection [Trial 7/15/02, pp 208-222, 240-242; Trial 7/16/02, pp 1-13, 19-21], that he left the Aloha Lounge at about 11:00pm, while the three complainants were still uninjured inside, and they encountered outside Mr. Vallejo, whom he knew as "Indio", Rocky and Viejo. Viejo said, "the problem ain't with you" or "ain't no problem with you." He recalled telling police that Viejo said, "we ain't got no problem with you." [Trial 7/16/02, pp 15-24, 40]. He agreed that the transcript of the preliminary examination indicated that he testified at that proceeding that he saw four people enter the bar, instead of three. [Trial 7/16/02, p34]. He conceded that he had been convicted of car theft. [Trial 7/16/02, p42].

Candida Herrara testified that she saw Louis and Rocky arguing outside of the Aloha Lounge. Louis pulled out a gun, and Rocky ran. She ran inside the house. She ran back out when she heard gunshots from inside and outside the Aloha Lounge, and heard her mother, Senaida Alicea, scream that her step-father, Angel Perez, had been shot. Her mother worked in the bar. [Trial 7/15/02, pp223-227].

Tiffany Odell testified to seeing Rocky outside the bar, three other men come out and run to the side of the bar, and Rocky shooting a gun. Then Candy's mother came out of the bar screaming that Angel had been shot. She did not identify Rocky in the courtroom. [Trial 7/15/02, pp 234-237].

Sherri Dupuis testified that she was sitting at the bar when she saw Mr. Vallejo pull up his shirt and take out a gun. She went to the bathroom, and while there, heard gunfire. [Trial 7/16/02, pp98-99].

Senaida Alicea, who was working at the Aloha Lounge as bartender, said that Mr. Vallejo, whom she called "Indio," entered the bar after midnight, went near the women's restroom, said something to Louis and raised his shirt up, came out to the middle area and said, "all I want is four beers, I don't want no problem." She agreed that she told police Mr. Vallejo was accompanied by a "skinny guy" at that point. [Trial 7/16/02, pp53-56, 72-73].

Ms. Alicea continued that Mr. Vallejo left the bar, then walked back in with two other guys. They stood in the middle of the bar and looked around. Mr. Vallejo and the skinny guy approached Eliseo Cuevas. Over objection, Alicea testified that the skinny guy told Cuevas, "you're the one we're looking for." She admitted that her signed police statement indicated that she told police the skinny guy said merely, "you're the one," and did not indicate the additional remark, "we're looking for." Both men hit Cuevas in the head with guns, and the skinny guy shot Cuevas. The skinny guy and the other unknown man walked out, and

1 Charges were dismissed against Orlando Gonzalez and Rocky Maldonado. [Motion 1/22/03, p. 16]. The unidentified person who apparently killed Eliseo Cuevas was never apprehended.

4

Mr. Vallejo remained. [Trial 7/16/02, pp 56-60, 80].

Ms. Alicea continued that Mr. Vallejo walked toward the middle area of the bar, and shot her husband, Angel Perez, in the back. Perez fell onto his stomach, by the pool table. She conceded that when the police asked her whether Indio shot Perez, she replied that the skinny guy rather than Mr. Vallejo, shot Perez. Mr. Vallejo then shot the bouncer, Joel Garcia, who also fell near the pool table, and then left. Ms. Alicea narrated the events depicted on the surveillance videotape, which began at 12:34am, and which she gave to police that same night. [Trial 7/16/02, pp62-65, 86, 94-96].

Angel Perez testified that he was behind the bar when Mr. Vallejo asked him for four beers, and looked around the bar. Mr. Vallejo went to the door, came back inside with other people, and he and the others jumped on Eliseo Cuevas. Someone other than Mr. Vallejo shot Cuevas, then "they" ran. Mr. Vallejo shot Perez in his back, telling him, "and you too," and shot Joel Garcia. Perez did not recall telling police that Mr. Vallejo said, "you too," and he agreed that his sworn statement did not reflect that remark. He denied that he was intoxicated, or that he had a gun on his person, and did not recall telling hospital personnel that he was shot by an unknown person while breaking up a fight. [Trial 7/16/02,pp 110-119,125,132,136,142]. Mr. Perez' medical records were admitted as evidence. [Trial 7/16/02, pp 233].

Joel Garcia testified that he was watching the door of the bar when Mr. Vallejo entered with two other men. They ordered beer, then the commotion erupted. Mr. Vallejo hit Eliseo Cuevas in the head with a gun, then another man shot him. Then Mr. Vallejo shot Angel Perez, looked at Garcia, said "you too" in Spanish and shot Garcia. The bullet traveled through the arm and into his side. Garcia admitted that he did not tell police Mr. Vallejo said, "you too;" that he previously testified that one man hit Cuevas then shot him; and that he previously testified that he did not see anything in Mr. Vallejo's hand when he was hitting Cuevas. [Trial 7/16/02, pp 148-154,171-174].

Lorraine Henson testified that she was shooting pool with Louis Mercado when Mr. Vallejo entered the bar with two other people. Mercado put down his pool stick and ran out the door. Mr. Vallejo and the others left, then Mr. Vallejo and one of the others re-entered. At this point, Ms. Henson was standing at the end of the bar, near Eliseo Cuevas. Over objection, she was permitted to testify that either Mr. Vallejo or the man he was with said in Spanish, "you're the one we're looking for," although she admitted that remark was not reported in her signed police statement. The two men then approached Mr. Cuevas, pulled out guns, and started pistol whipping him. Mr. Vallejo hit Cuevas twice in the front of the head. As Ms. Henson was walking away, she heard a gunshot. As she looked over, she heard two more shots. She saw that Angel Perez and Joel Garcia were shot. [Trial 7/16/02, pp180-188,197-199].

Officer Danny Barbee arrived at 1:05am. Mr. Cuevas was lying at the end of the bar, and appeared dead. Perez and Garcia were taken to the hospital. His partner seized a surveillance videotape. Over objection, Barbee testified that people said "India" was involved. [Trial 7/15/02, pp184-187, 191, 194, 204-207].

5

Police evidence technician Donald Rem described the crime scene, as it was depicted by the sketches he drew and photographs he took. He found five spent casings, three outside the bar and two inside of the bar. Two of the casings were 9mm Luger brand, and three of them were 9mm FC brand. He also recovered one bullet fragment from inside a wall. Pools of blood were near the pool table and the women's restroom. There were three surveillance cameras. Cuevas' body was at the end of the bar. From Mr. Cuevas' body, he retrieved $25, a wallet, a silver necklace and a packet of cocaine. [Trial 7/15/02, pp 156-157, 164, 167, 172, 176-181].

Dr. Buguslaw Peitak, the medical examiner who performed the autopsy on Mr. Cuevas' body, testified that Mr. Cuevas died from a single gunshot wound to the head. There was powder stippling around the wound, indicating that he was shot from a range of three feet or less. He also had two lacerations on the back of his head, caused by blunt force injury. There was cocaine and alcohol in his blood. [Trial 7/15/02, pp 132-139].

Officer Glynn Davis relayed the contents of a statement taken from Mr. Vallejo after his arrest. Mr. Vallejo said that he went to the bar alone and left alone. When he arrived, he saw people running, pulled out his 9mm handgun and "smacked this guy." He did not know this man, and did not see him get shot. When asked why he shot two men on his way out of the bar, he replied that he did not remember. He indicated that he was known as Indio.[Trial 7/16/02, pp218-220].

The parties stipulated that Mr. Vallejo was ineligible to possess a firearm due to a felony conviction on January 9, 1997. [Trial 7/16/02, pp232].

The court refused a defense request for jury instruction pursuant to CJI 2d 8.3, "Separate Crime Within the Scope of Common Unlawful Enterprise." [Trial 7/16/02, pp 226-229; Trial 7/17/02, pp 55-65].

Def. - Appellant's Br. On Appeal, in *People v. Vallejo,* No. 246341 (Mich. Ct. App.), at 1-5.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed

by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27

(1997). Amongst other amendments, the AEDPA amended the substantive standards for

granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined

by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Confrontation Clause Claim (Claim I)*

        1.      Hearsay Evidence and the State Court Proceedings

Petitioner first claims that he was denied his Sixth Amendment right to confront the witnesses against him by the admission of hearsay statements testified to by three witnesses at trial. At trial, the prosecution used this testimony concerning out-of-court remarks made by third parties to suggest a concert of action and shared intent between Mr. Vallejo and the killer of

Eliseo Cuevas. The challenged testimony given by Eric Mercado, Senaida Alicea and Lorraine Henson can be found in the factual background section *supra*.

2.    Procedural Default

Respondent contends that Petitioner's first claim is procedurally defaulted and that petitioner is unable to demonstrate cause and prejudice to excuse the default. The Michigan Court of Appeals held that petitioner's trial counsel objected to the contested statements on hearsay grounds but failed to assert to the trial court that the admission of the statements violated his rights under the confrontation clause of the constitution. See *Vallejo*, 2004 WL 2412707, at * 1, slip op. at 1. Based on this finding, the Michigan Court of Appeals classified petitioner's claim as an unpreserved claim of constitutional error which was reviewed for plain error regarding petitioner's constitutional rights. *Id.*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-

established at the time of the petitioner's purported default.")

Even if the Court were to conclude that petitioner's first claim is procedurally defaulted, it is still necessary to consider its merits. As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that the procedural default in this case was caused by the erroneous interpretation of his counsel's hearsay objections and argues that his confrontation claim was fairly presented to the lower state courts. In posing this argument, petitioner appears to cite the line of federal cases holding that he need not recite "book and verse on the federal constitution" in order to have "fairly presented" a federal constitutional claim. *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984). However, on its face this line of cases appears to cut in favor of respondent's assertion that petitioner's confrontation clause claim is procedurally defaulted because it was not adequately presented it to the state trial court.[2]

Respondent interprets petitioner's brief to be raising ineffective assistance of counsel as cause for his procedurally defaulted confrontation claim. To demonstrate that either his trial or appellate counsel was ineffective petitioner must show, *inter alia*, that his confrontation claim, if properly presented, would have succeeded. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282

---

[2] A petitioner can take four actions which are significant to the determination as to whether a claim has been fairly presented: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose,* 811 F.2d 322, 326 (6th cir. 1987)).

(1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

3.      Clearly Established Law

The first task in analyzing petitioner's confrontation claim is to determine precisely what constitutes "clearly established federal law" with respect to the claim.

*a. The Current State of the Law: <u>Roberts</u> and <u>Crawford</u>*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965). Prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). In *Roberts*, the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings. Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66.

As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception. The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements

11

made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

In *Crawford v. Washington*, the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id.* at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69.

In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68. The Court did, however, provide some guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would

reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id*. at 51-52 (internal quotations and citations omitted). While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover, "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

### b. The Applicability of <u>Crawford</u>

The first question here is whether *Crawford* constitutes clearly established law governing petitioner's claim. *Crawford* was decided on March 8, 2004. Petitioner's direct appeal of right was decided by the Michigan Court of Appeals on October 28, 2004, after the issuance of the *Crawford* decision. The Michigan Supreme Court denied leave to appeal on July 26, 2005. The most direct statement of the correct timing rule by the Sixth Circuit instructs that "[u]nder AEDPA . . . [a court's] inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent *at the time [petitioner's] conviction became final*." *Onifer v. Tyskiewicz*, 255 F.3d 313, 317-18 (6th Cir. 2001) (emphasis added). In light of this language the Court should conclude that *Crawford* constitutes clearly established federal law as determined by the Supreme Court for purposes of petitioner's confrontation claim. *Cf. Turner v. Wolfenbarger*, No. 04-73821, 2006 WL 2070394, at *8 n.4 (E.D. Mich. July 26, 2006) (Friedman, J.) (declining to apply *Crawford* because "*Crawford* was not clearly established law before Petitioner's conviction became final.").

### c. The Applicability of <u>Roberts</u>

As explained above, *Crawford* establishes a confrontation rule with respect to

"testimonial" statements; it has no application to non-testimonial hearsay. The question therefore remains whether *Roberts* has any applicability to this case to the extent that the statements admitted at petitioner's trial were not testimonial hearsay under *Crawford*. Because it is now clear that the Confrontation Clause is not at all concerned with non-testimonial hearsay, the Court should conclude that *Roberts* has no application here.

In *Crawford*, the Court suggested but did not definitively rule, that the Confrontation Clause is limited to regulating the introduction of testimonial hearsay, and has no application at all to the admission at trial of non-testimonial hearsay. The Court explained that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68. Immediately following *Crawford*, the courts concluded that *Roberts* remained applicable to non-testimonial hearsay, observing:

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements. . . . [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005); *see also*, *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005); *United States v. Savoca*, 335 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2004). Regardless of whether this reading of the *Crawford* dictum was correct, the Supreme Court has since clarified that the Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay. In *Davis v. Washington*, 126 S. Ct. 2266 (2006), the Court explicitly addressed this question of "whether the Confrontation Clause applies only to testimonial hearsay," *id*. at 2274, and in doing

so abrogated *Roberts* in whole. The Court noted that the answer to this question was suggested in *Crawford*, when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who give "testimony." *Id.* (discussing *Crawford*, 541 U.S. at 51). The *Davis* Court explained that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id.* Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered. *See Whorton v. Bockting*, 127 S. Ct. 1173, 1183 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006); *Gabarrette v. Sullivan*, No. C 04-5454, 2007 WL 578991, at *9 (N.D. Cal. Feb. 21, 2007); *State v. Paiz*, 149 P.3d 579, 587 (N.M. Ct. App. 2006); *Hodges v. Commonwealth*, 634 S.E.2d 680, 689 (Va. 2006).

Here, even if the Michigan Court of Appeals erred with respect to its analysis of any non-testimonial hearsay under *Roberts*, petitioner would not be able to show a constitutional violation as required by § 2254(a), because the introduction of non-testimonial hearsay does not violate the Confrontation Clause.[3] Thus, in light of the language of § 2254(a) and the Court's decisions in *Crawford* and *Davis*, the Court should conclude that *Roberts* is irrelevant in this

---

3 Although this result flows from a plain reading of § 2254, the conclusion is buttressed by the absurdity of a contrary result. For instance, suppose that the Court were to conclude that the Michigan Court of Appeals unreasonably applied *Roberts* with respect to a particular non-testimonial statement, and that this finding alone entitled petitioner to habeas relief. The actual relief to which petitioner would be entitled would be a new trial. However, at that new trial, the prosecution would be free to again introduce the non-testimonial statement, because under *Crawford* and *Davis* it is clear that the non-testimonial statement is not barred by the Confrontation Clause.

habeas proceeding. The only question before the Court with respect to petitioner's confrontation claim is whether the court of appeals' conclusion that the evidence was admissible was contrary to, or results from an unreasonable application of, the Court's decision in *Crawford*.

4.      Analysis

After applying the *Crawford* standard, in light of § 2254(d)(1), this Court should conclude that the state court's admittance of hearsay remarks made by unavailable declarants which suggested that petitioner shared the premeditated and deliberated intent to shoot and kill Eliseo Cuevas did not result from an unreasonable application of *Crawford.*

The statements at issue, which were not offered for the truth of the matter asserted, were spontaneously made by the perpetrator of a crime before the crime took place. As such, they do not fall within either of the first two possible formulations of testimonial statements outlined in *Crawford*. In attempting to develop a more comprehensive definition of the meaning of "testimonial" in factually similar cases, the Sixth Circuit built upon *Crawford's* third formulation by stating, "The proper factual inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *U.S. v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004).

Applying this definition of "testimonial", it is clear that the hearsay statements admitted in petitioner's trial were not testimonial and did not entitle him to a Sixth Amendment right to confrontation in this regard. This determination is in line with Sixth Circuit's jurisprudence regarding happenstance statements of declarants made to persons other than police officers or

government informants.[4] To hold otherwise would be counterintuitive, since it makes no sense to assume that the unavailable declarant in this case made the statements at issue with the belief that they would be used as evidence against him or his cohorts in a later court proceeding. If that were the case, it would logically follow that the unavailable declarant anticipated being apprehended and charged with crime prior to its perpetration. That premise is clearly illogical and can not be entertained by this court in light of the evidence presented in this case. Accordingly, the Court should conclude that the statements made by the unidentified declarant prior too and during the commission of the murder of Eliseo Cuevas were not testimonial and that their admission did not violate the Confrontation Clause.

Because the admission of the evidence in question did not result in a violation of petitioner's Sixth Amendment right to confrontation, the Court should conclude that Petitioner is not entitled to habeas relief on this basis.

E.    *Jury Instruction Claim (Claim II)*

    1.    Denial of Jury Instruction CJI 2d 8.3

Petitioner next claims that he was denied due process of law when the state trial court declined to read a requested jury instruction regarding whether a murder exceeded the scope of a joint assault. He contends that by refusing to read this supplementary jury instruction the state court failed to inform the jury of all the necessary elements of the crime for which he was convicted. The court should conclude that petitioner is not entitled to habeas relief on this claim.

---

4 In *U.S v. Franklin*, 415 f.3d 537, the Sixth Circuit held that testimony given by a witness regarding out-of-court statements made by the defendant's co-defendant was not testimonial and did not abridge the defendant's Sixth Amendment right to confrontation because the witness was "privy to Clark's statements only as his friend and confidant." *Id.* at 545.

2.    Clearly Established Law

The Due Process Clause guarantees criminal defendants the right to be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta,* 467 U.S. 479, 485 (1984). Still, this constitutional guarantee does not prohibit the states from placing reasonable limitations on that right. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (defendant's right to present evidence in his defense subject to reasonable restrictions which states may impose). In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *Wood v. Marshall,* 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey,* 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990)). In habeas claims of this sort, the issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Determining the significance of an error in jury instructions, if one in fact exists, requires comparing the instructions actually given to those which should have been given. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).In situations where a habeas petitioner's claim of prejudice is not based on a given erroneous instruction, but on a failure to give a supplemental instruction, the burden of demonstrating that the omission supports a collateral attack on the constitutionality

of a state court judgment is especially high, even greater than the showing required to establish plain error on direct appeal. *See id.* at 154-55. In short, instructional errors of state law will rarely form the basis for habeas corpus relief. *See Estelle,* 502 U.S. at 71-72.

3.    Analysis

In analyzing petitioner's due process claim, the initial inquiry is whether he was erroneously deprived of a jury instruction to which he was entitled under state law. *See Davis v. Strack,* 270 F.3d 111, 123 (2d Cir. 2001). Petitioner's theory at trial was that the common plan was to assault rather than kill the victim and that he could only be convicted of murder if the killing was within the scope of the common plan. *People v. Carlos Vallejo*, No. 246341, 2004 WL 2412707, pp 2 (Mich. Ct. App. October 28, 2004) (per curiam). Based on this theory of defense, petitioner requested CJI 2d 8.3, an aiding and abetting instruction dealing with separate crimes within the scope of the common unlawful enterprise. *Id* The instruction would have provided in part that:

> In determining whether the defendant intended to help someone else commit the charged offense of [state charged offense], you may consider whether the defendant might have expected the charged offense to happen as part of that activity. There can be no criminal liability of any crime not fairly within the common unlawful activity.

[Trial Tr., dated 7/16/02, at 226-28]. The state trial court refused to give the instruction, reasoning that it was not supported by the evidence presented at trial. *See id.* In reviewing the decision, the Michigan Court of Appeals explained that under Michigan law, "[j]ury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories *if the evidence supports them." Vallejo*, 2004 WL 2412707, at *2, slip op. at 2. (quoting *People v Canales,* 243 Mich.App 571, 574; 624 NW2d 439 (2000) (emphasis added)). The Michigan Court of Appeals, reviewing under a de novo standard, affirmed the

lower court's decision, agreeing that the requested instruction was not supported by the evidence presented at trial and was thereby inapplicable to petitioner's case. *See id.*

Respondent, in his answer to petitioner's habeas brief, argues that defense counsel conceded at trial that there had been no evidence presented to suggest that the men were engaged in a common unlawful activity that was not within the scope of the charged crime. *See* [Trail Tr. dated 7/16/02, at 228-29].

Prior to the presentment of instructions to the jury, the trial judge informed petitioner's counsel that he would not give the requested instruction because the instruction was only supported by the defendant's interpretation of the evidence and not by the evidence itself. *See* [*id.* dated 7/17/02, at 58-65]. It is true that a review of the evidence presented at trial brings the trial judge's decision on this matter into question. A neutral reading of the judge's reasoning could be interpreted as indirectly requiring petitioner to prove his theory of the case to the judge in order to get a jury instruction that supported that theory. In analyzing defense counsel's theory and concluding that the instruction was inapplicable, it seems that the judge integrated his own personal interpretation of the evidence into the evaluation, thereby taking that specific determination of fact out of the jury's hands.

However, after comparing the jury instructions given with those requested by petitioner, it is clear that petitioner is unable to demonstrate any federal constitutional violation arising from the trial court's failure to give the requested jury instruction on "Separate Crime Within the Scope of Common Unlawful Enterprise."

Even if the trial court erred in its judgment regarding this particular jury instruction, that error did not amount to a violation of "fundamental fairness" as outlined by the Supreme Court in *Estelle v. McGuire, supra*. A failure to instruct does not deprive a petitioner of fundamental

fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v.* Godinez, 67 F.3d 734, 743 (9th Cir. 1995).

During jury instructions in petitioner's trial, the jury was instructed in pertinent part that:

The prosecutor must prove each element of each offense beyond a reasonable doubt…If you find the prosecutor has not proven every element of each offense beyond a reasonable doubt, then you must find the defendant not guilty…Defendant is charged with committing first-degree premeditated murder of the lesser included offense of second-degree murder, or that he *intentionally assisted someone else in committing either of those offenses*…To prove this charge the prosecutor must prove the following three elements beyond a reasonable doubt:

First, that the alleged crime was actually committed, either by the defendant or by someone else. It does not matter whether anyone else has been convicted of that crime.

Second, that before or during the crime the *defendant did something to assist in the commission of the crime.*

Third, *that defendant must have intended the commission of the crime alleged, or must have known that the other person intended its commission at the time of giving assistance.* It does not matter how much help, advice, assistance, encouragement or assistance the defendant gave. However, you must decide whether he *intended to help another commit the crime* and whether his help, advice, assistance or encouragement actually did help, advise, assist or encourage the crime.

[Trial Tr., dated 7/17/02, at 72-74 (emphasis added)]. Petitioner can not prove that the trial court's failure to give the requested jury instruction rendered his entire trial "fundamentally unfair" because the jury was given the uninhibited option of adopting his theory of the case based on the jury instructions it was given. A single instruction to a jury must not be judged in isolation, but must be viewed in the context of the over all charge. *See Boyd v United* States, 271 U.S. 104, 107 (1926). Petitioner's counsel at trial adamantly argued that petitioner did not intend to aid in the killing of Eliseo Cuevas and that he only intended to help in the assault of the

victim. The record demonstrates that the jury was well aware of this assertion as it was one of the main focuses of both parties' closing arguments.

The jury in this case was charged fully and explicitly about the prosecutor's burden of proving beyond a reasonable doubt that petitioner intentionally aided the unidentified shooter in the killing of Eliseo Cuevas. Had the jury agreed, based on the evidence presented, that petitioner was in no way part of a common plan to kill Eliseo Cuevas and that he was unaware of the unidentified shooter's intentions, they could not have found him guilty of aiding and abetting a first degree murder. The instructions given specifically state that defendant must have "known that the other person intended [the killings] commission at the time of giving assistance." [Trial Tr., dated 7/17/02, at 72-74]. By finding that petitioner intended to and did give assistance to the unidentified shooter in the commission of Eliseo Cuevas' murder, it must have believed that the murder was part of a "common unlawful activity" or agreement between the two perpetrators. That being the case, a reading of the requested jury instruction would not have improved petitioner's position or altered the outcome of the case. The effect of CJI 2d 8.3 is to remind the jury that in some instances of concerted criminal activity, unexpected results occur and it is their job to determine whether or not the defendant expected the charged offense to happen as part of that common unlawful activity. There can be no question that the jury in petitioner's trial found that he purposefully intended to aid in the killing of Eliseo Cuevas and the possibility that the jury would have found otherwise if the requested instruction had been given is "too speculative to justify the conclusion that constitutional error was committed." *Henderson v. Kibbe,* 431 U.S. 145, 157 (1977); *See Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990) (habeas relief not warranted where "the instructions finally given to the jury adequately addressed the [petitioner's] theory in a general way, even if not as specifically has [he] would have liked," and

22

the instructions, "considered together, and along with counsel's argument and cross examination…should have reasonably conveyed to the jury [petitioner's] theory of the case".) Accordingly, the Court should conclude the petitioner is not entitled to habeas relief on this claim.

F.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
_____

PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated:7/10/07

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 10, 2007.

s/Eddrey Butts
_____

Case Manager